Good morning. You can start whenever you're ready. May it please the court, my name is Marilyn Ozer. I'm here representing Jervis Ricky Davis. This morning the government is asking this court to carve out an exception to Huey v. United States or read into the Victim and Witness Protection Act an amendment the Congress did not make. This isn't necessary. It's been the law in federal courts for almost a quarter of a century. And specifically in this case it is not necessary. The government had a plenitude of opportunities and time to seek restitution if that's what was desired. And each time they failed to seek the restitution. The first time would be on the day of his arrest, March 23, 2009. Mr. Davis was arrested in state court on charges of felony B&E and larceny and possession of a firearm by a felon. This stayed in state court for almost a year and a half. At any time the state could have prosecuted that case and there's no question that Mr. Todd Dry could have gone into court given valuation of what he says was lost or what damages he had to pay and restitution would have been available. But the government, in this case the state of North Carolina, did not seek it. Those charges were dismissed about a year and a half later on September 1, 2010 when the federal government issued its indictment. Let me make sure I understand the context. This is over $685 in restitution. Yes, sir. Were you appointed or privately retained? I'm a panel attorney. Court appointed? Court appointed. Okay, so now I'm beginning it. I didn't pick up on that. Did they ever find the gun? Apparently they didn't find the gun. It's kind of hard to believe because the neighbor saw him leaving the house through the window. The neighbor followed him in a car. He got out of the car leaving all the jewelry in the car and ran into the woods. And this is Nash County. It's not a national forest so it's a little bit hard to understand why they couldn't find the gun. But they actually went back out there with officers and dogs looking for the gun. It's possible someone... We're in Nash County. We were talking about it. It did look like a national forest at some point. Well, they went back out there with dogs and officers looking for the gun and they couldn't find it. Somebody probably found it. So it looks like you've got some support for your argument here. But I was curious about the $500 that apparently the so-called victim paid for the deductible on the gun. Well, the whole thing is curious. On page 69 of the joint appendix or page 3 of the pre-sentence report, it clearly says officers located the stolen jewelry, the bag of ammunition, but could not locate the stolen firearm. And three paragraphs later we have Mr. Todd Dry trying to get restitution for the $400 in jewelry that was stolen but was found immediately and his insurance deductible for the stolen firearm. And this is why if this had been done in state court in North Carolina, we wouldn't have these questions. Mr. Dry would have shown up and he would have had to have explained exactly what he's talking about, asking for a jewelry payment that was found. What does he mean, insurance deductible? It's not clear if the deductible is from some home insurance policy or if he had a specific firearm policy. And that's why in federal court the judge was supposed to make findings of fact and those were never made. So this court has no record before it to support any finding of restitution. It looked to me like restitution was kind of an afterthought during this sentencing. That's the other problem. The federal government had, when they took over the case in September 2010, they arranged the plea agreement which took place in February 2011. And by that time, almost two years has passed. They had plenty of time to figure out who the victim was, how much he had lost, to put it in the plea agreement which is what 3663 requires. That was not done. Then we get to the sentencing hearing which is Judge Traxler's point. Beginning of the hearing, government is asked, any objections? Government attorney says no. That's because of PSR and the PSR said restitution is not an issue. Right. That's correct. And then at the end, right before judgment, no objection. And then the government's attorney stands up and says, and I don't quite understand this, I have no objection but I do want to make a correction. I'm not sure what the difference is. And the correction was that she wanted restitution. And she very questionably refers the judge to page three of the pre-sentence report and says Mr. Todd Dry is named there. But she does not also say, and if you read the next sentence, the probation officer says restitution is not available. So Judge Traxler, what this basically did was sandbag the district court judge, certainly sandbag the defense attorney because there had been no objections all the way through and there were no findings of fact. So we're all standing here wondering what he's asking for. Why does it come up after judgment has been entered? And the case law is clear. In the United States v. Blake, the government is arguing that, well, the fact is he knew that the gun was stolen because he stole it. Well, in U.S. v. Blake, this court states the factual connection between the conduct and the offense of conviction is legally irrelevant for the purpose of restitution. And the facts in Blake were, from some points of view, much worse because what Mr. Blake was doing was going up to elderly women who he thought weren't going to resist him very much and grabbing their wallets or handbags, taking out their credit cards, and then using the credit cards. So he's convicted of use of unauthorized access devices, which in English is he used the stolen credit cards. And when it came to sentencing, the older women said, well, can we get our money back for the purses that we lost or the wallets that we lost? And this court said no. The factual connection is not enough. It's legally irrelevant. What has been the law since Huey and since Burton v. Jones  And the elements in this case, possession of a firearm that has been in interstate commerce and knowledge that it was stolen. That's it. Not theft. Mr. Davis was charged with theft in state court. That charge was dropped. The government has, in fact, waived requesting restitution because they didn't ask for it anywhere along the line where they should have asked for it. The defense attorney did not raise an objection, so we have raised this as plain error, which this court has found before in similar cases. So I reserve my rest of the time for rebuttal. All right. Thank you, Ms. Ozer. Let's hear from Ms. Fritz. May it please the court. My name is Christine Fritz, and I represent the government in this matter. This defendant damaged a residence while breaking in to steal the firearm upon which his conviction was based, and he permanently deprived the owner of that firearm. The court's $685 restitution order is proper, and the judgment should be affirmed. In this particular case, the government's position is that the restitution order was proper under 3663A. The plea agreement specifically contemplates that there may be restitution ordered under 3663 or 3663A. And in this case, the court ordered the restitution pursuant to 3663 because Mr. Dyer was a victim of the conduct underlying the defendant's offense. The government of that conduct, are you saying, would lead to a conclusion that restitution must be had here in light of Blake? I mean, Ms. Ozer has enumerated the three elements. She said the defendant here had not been convicted of theft of this gun. Which of those three would tie this conduct to restitution? There are two elements, Your Honor. First, possession of a stolen firearm. The government is required and bears the burden of proving that the firearm was stolen. In this particular case, the government would establish the stolen nature of the firearm by showing that the defendant, in fact, stole the firearm. Furthermore, the third element... In fact, the element need not be established by the defendant's stealing of the firearm. The element can be established if anybody has stolen the firearm. Certainly, and if this... So it goes back to how is this an element, that the defendant stole the firearm? It is not an element that the defendant, in fact, stole the firearm, but we have the burden of showing that the firearm was stolen. There are certain cases in which, for example, if a defendant purchased a firearm that was, in fact, stolen from the back of somebody's car in the street under circumstances where he has reason to believe that it's a stolen firearm. Respectfully, the government is not contending that restitution is appropriate in that case. I guess that I think on the facts here, it seems like you should get restitution, but that's because of the other crimes that were involved here, like the breaking and entering. But you didn't charge him with that, and there wasn't a plea to break and entering. All there is is a plea to possession of the stolen firearm. Yes. So that's the only... Those are the only facts that we have for the basis of the restitution. That's what you're stuck with. You can't go back and look at all the other facts in this case. You could have, as your colleague mentioned, you could have charged him with the breaking and entering, and then you could have gotten restitution on that basis, but you didn't. Respectfully, I don't believe that the federal government could have charged him with the breaking and entering. Come on, respectfully, I take your point. The state court could have done it and could have gotten restitution on that basis, but they didn't. No. You decided to take it federally. Yes, and it was taken federally because of the defendant's substantial criminal history. He would have been an armed criminal. But you made that decision. Yes. And what's important is, and if you look at Huey as well as the other cases, they talk about the specific conduct underlying the offense. Here, the specific conduct underlying the elements of the offense are that the defendant stole the firearm. Certainly we must prove possession of a stolen firearm, and it doesn't necessarily matter who stole it, but in this particular case, we know that the defendant stole it. We also have to prove the knowledge aspect. Did you ever object to the government object to the pre-sentence report? The government did not object to the pre-sentence report. The pre-sentence report says that Huey would not permit this. That is the probation officer's opinion. That's in the pre-sentence report that you just told me you didn't object to. We did not object to it in writing prior to, however. Did you object to it orally at the beginning of the sentencing hearing when the district court asked if you had the objection? No. No, and indeed you said you had no objection. That's correct. So you accept it. It's yours. I would disagree. I think that the district court can, under Rule 32, consider objections subsequently raised. Do you have any objections to the BSR the way it's written, and you don't object? Do you think that still allows you to challenge what's written in the BSR later on? And do you want us to write a law like that? Can you imagine where that's going to go? I think that the law, Rule 32, does permit the court to consider objections that have not been raised in writing to the pre-sentence report. But that's not the question in front of you. It's not that you didn't raise it in writing. It's that you accepted the PSR. You said you had no objections to it. You didn't object in writing, and you were asked verbally, do you have any objections? No. That is true, and I think that, however, during the sentencing we did place the issue of restitution on the table, and the defendant did not object to our raising it. We placed it on the table, but did you tell him about the second sentence that was in the PSR that you did not object to? I think that we did refer to that paragraph. We referred to the paragraph at the bottom of page 3 where it talks about the stolen firearm being from Mr. Dyer's house or Dry's house. And you went on to say to the district court, but of course the PSR that we have not objected to says, in keeping with Huey, the Supreme Court case, restitution is limited to the count of conviction unless specifically agreed by both parties in the plea agreement. Inasmuch as there is no victim associated with the count of conviction and the plea agreement does not specifically identify the victim or the harm and the respective monetary loss, restitution is not compensable. You said all that? No, we did not say all that. Did you indicate that the PSR had indicated that they had said, concluded that restitution was not compensable here? I'm happy to listen to your answer, but can you first give me a direct yes or no to that? Did you indicate that the PSR indicated that restitution was not compensable? Not in those exact words. Well, in any words that would give the court the idea that the PSR had said that restitution, to which you had agreed, said restitution was not compensable? She stated, I don't believe in the sentencing portion there's an indication of restitution listed there in the PSR. So she acknowledges that restitution was not recommended by the PSR. No, she just said it's not listed. It's from what you're reading me. You still haven't answered my question. And then the probation officer goes on to say it's listed in the report but not on the recommendation. So I think that the government and... Do you think you put the court on notice that the probation officer had said that there was not restitution compensable here and that you'd agree with that? Yes, I think that between the government counsel and the probation... The government counsel, not the probation officer. The government counsel put the district court on notice that it had agreed that restitution was not compensable but that it now wished to have restitution. I think that the assistant United States attorney recognized her mistake in having previously noted that there were no objections. Her response about restitution was specifically tied to the court's comment during the sentencing that because there's no identifiable victim, restitution is waived. And at that point, the assistant United States attorney says, no objections, but we wanted to note a correction. And the correction that she wanted to note was that, in fact, there is an identifiable victim. Of course, there's not an identifiable victim to the possession of a stolen weapon. Our position is that under these circumstances, there is. And this case is different from those upon which the defendant relies. For example, in United States v. Blake, the defendant pleaded to use of the unauthorized access devices. The elements of that offense is the intent to defraud, the knowing use of the unauthorized access device, to obtain things of value exceeding $1,000, and that that was in and affecting commerce. Let me ask you this. Could this problem be avoided in the future by including in the plea agreement exactly who the victim is and how much money they're going to get? Certainly, a plea agreement could include such provisions, but this plea agreement does leave open. Why don't you just do that? Then you eliminate this problem completely. When you plead guilty, you agree to pay Mr. Dyer $685. Period. Can't all this be avoided by being specific? That would have been very nice had that happened. In fact, there was no agreement for that. There was no agreement. There was no provision specifically addressing Mr. Dyer. There was no agreement. Are you representing to us that the government did have an agreement with this defendant to repay the $685? I'm representing that the defendant agreed to make restitution as the court ordered pursuant to 18 U.S.C. 3663. But I'm asking you if this defendant had an agreement with the government, whether in writing or not, that he would repay the $685. No, but the defendant agreed to pay restitution as the court ordered under those sections, and our position is that this situation, this victim, his damages fall under that section. I understand what your position is. Now, in Blake, the defendant's action of robbing people to obtain their credit cards, it doesn't underlie any element of that offense. It doesn't underlie his intent to defraud through his use of the credit card to obtain things. In Hawkins, the defendant pleaded guilty to 922-G because basically he pistol-whipped somebody with the firearm, and in that situation, the court said, no, you don't get damages to that person because how the defendant used the gun does not underlie any of the relevant elements. You have to show that the defendant's a felon, that he possessed the gun, and it was in and affecting commerce. Was that defendant convicted of pistol-whipping? No, he was convicted of 922-G, and the court said that you do not... You think he might have gotten restitution had it been that he was convicted of pistol-whipping? I don't think that's exactly a federal crime, but if it were in the context of, for example, a carjacking... Just in terms of there is a conviction, there is some crime for beating him with a gun. I mean, if he gets that conviction, would he be entitled possibly to restitution quite clearly then? If the defendant is, yes, convicted of a crime that required showing that harm. So don't you see the analogy of what you've got here? You've got a generic offense, which you can seek to insert all the common sense where it was stolen. It must have been stolen from somewhere. Stolen from here, the East Pacific. In fact, stolen from this guy. But it's the same thing you've got there. You've got a card, or you've got to get a gun. He's got it, the whole bit. He uses it to beat someone. The same thing with the card. You could use that same logic and say, well, it was used, wasn't it? Used unauthorized, and it was his card, so that money had to come from his account. Why don't you give it back to him? And the court looked at it specific to the offense. Well, under your example, the court did order restitution related to the unauthorized use of the cards in Blake. There was restitution for the unauthorized use. It was just that there was not restitution for the preceding robberies from individuals because those robberies weren't conduct underlying the use of the offense, of the stolen firearm. So, again, you have this specific tie as to where it comes from, but you don't have that here. In this case, we have to establish that the firearm was stolen, and the defendant knew or had... I mean, stolen is all you need to show. It's stolen. Yes. It doesn't mean it comes from this victim. It's nothing specific. It doesn't tell you how it was stolen or anything else. That's correct, but what's important is that Huey, as well as the other cases, talk about the loss caused by the specific conduct that is the basis of the conviction. So you look at the conduct that is underlying the elements of the offense, the conduct underlying the offense of conviction. Here, the defendant's conduct underlying his conviction is that he broke into the residence, stole the firearm, and permanently deprived the owner of his firearm. Now, for example, in the Sixth Circuit case that's cited in our brief of Freeman... None of those are elements of this offense. He didn't have to break into a residence. He didn't have to do it in the manner he did to be convicted of this offense. That's correct, but his... That's all he pled to, possession of a stolen weapon. Yes, and the factual basis represented that the plea agreement is consistent with what is in the PSR, which is that he broke into the residence, stole the firearm. The PSR has it in there that restitution is not available because Huey doesn't allow it, that you did not object to. Is that the one you're talking about? Yes. Oh, I see. So we ought to look at that PSR. No, I think that to the extent that we're looking at the issue of whether or not restitution was appropriate, yes. Unfortunately, the government raised it at a very late stage in the sentencing hearing. To the extent that the gov... I'm sorry, the government raised it at a late stage. To the extent that the defendant felt sandbagged by this, the defendant should have said something. The defendant should have objected. The defendant should have asked for a continuance. This is a plain-error standard. In the circumstances of this case, I'm actually surprised that the United States doesn't agree to vacating and remanding. I really am. I don't know what the downside is for you. Excuse me. Go ahead and answer, Judge Morris. I think that the reason we're not vacating and remanding is because we don't believe the district court committed a plain error. I think in any event, the government didn't. Rather than going into a debate with what the cases say to you, I think the way the government behaved here was not one that we hold the United States to. Maybe you think it was entirely appropriate. I think it's unfortunate the way it happened. I think that there were communications to the assistants to make sure that similar problems don't occur in the future. I certainly don't think it was done maliciously. As Judge Traxler had represented, it almost seemed like an oversight, and it came up at the end. The court addressed the issue without any objection from the defendant. It's a plain-error standard, and the court, we don't believe, plainly erred. In Blake, we had a situation where the guy stole the credit cards and then used them, and he pled guilty to unauthorized use of a credit card. Now, obviously, if he stole them, then he knows his use is unauthorized. But we said that's not enough, that we're not going to take those prior facts and use them to bootstrap your way into showing that he stole them and owes a restitution. Now, that to me seems the same kind of situation we've got here, where it's stolen, and the reason he knows it's stolen is because he stole it. So it seems like if we're going to be consistent with Blake, we have to say that the connection that's required to the element of offense is just not there. I don't think that Blake required a showing that the cards were stolen. No, it required a showing of unauthorized use. And we said the fact he stole it and would have known it was unauthorized just from the theft is not enough. Well, the element there was that, I mean, his intent was an intent to defraud, and he intended to defraud, and he used access devices that weren't his. It didn't matter that he stole it. The government didn't have to prove. When this guy's got a gun, he knows it isn't his. He knows it's stolen. But the government, in a stolen firearm case, the government has to prove, in fact, that the firearm was stolen. Right, and Blake, you have to prove it's unauthorized. You have to prove that it's unauthorized, but it doesn't have to be stolen. It could simply be somebody using their mom's credit card. Actually, both of them just are basically requiring knowledge. You know it's not yours, and you can't use it, can't have it. Or they're saying, you can't use this credit card, you can't have this gun. Same thing, basically. I think, however, I mean, the conduct underlying the unauthorized use is simply that act of buying something with a credit card that you're not allowed to buy things with. It doesn't matter how he came into possession of that buyer, or of the credit card, whereas it's incredibly relevant. It's the unauthorized part of it. I think it's a direct parallel. I think that if you prove that the defendant used an access device that did not have his name on it, and that that person did not say, you may use this card, I think you have proved the unauthorized aspect. You can't use this credit card, you can't have this gun. Well, we have to prove that the gun was stolen. I mean, in a regular felon in possession case, that's the situation. You can't have this gun. You can't use this credit card because it's somebody else's. You can't have this gun because it's somebody else's. I think that the elements differentiate it. And I would ask this court to consider the Sixth Circuit's approach in Freeman, where there were the 12 specific firearms that were part of a series of thefts of firearms, and the defendant pled guilty in relation to possessing 12 particular firearms that he and others had stolen. When the restitution was ordered, they tried to hold the defendant accountable for the whole series of thefts. He agreed to that. He brought it up on appeal just to get it down to 12. It started out with, like, 36, didn't it? I don't believe there was any specific provision in the plea agreement agreeing to it. I think that's what he was arguing for. He says, you know, I only want to pay for 12. I don't think he brought up the issue of this old issue that's here. Well, yes, he was arguing that he only wanted to pay for 12 because those were the ones. He didn't bring it up on appeal on the issue of whether he should be given restitution at all. Totally different case than what you've got here. Well, I think that in order to answer the question, the Sixth Circuit did have to consider, in the first instance, can you even legally authorize a restitution award in this context? If the court has no further questions, I ask that you affirm the judgment of the district court. Ms. Ozer, do you wish to make any reply? Just quickly, you asked whether or not in the future prosecutors would know enough to put this in the plea agreement. Well, the Victims and Witness Protection Act was amended almost a quarter century ago, which to me is frightening. 1990 is now a quarter century ago. They've had 23 years to figure out, put it in the plea agreement. And they haven't done it, at least not in this case. And that leads directly into this hair splitting that the government's been arguing for the last ten minutes, whether or not use and theft is the same thing. If the government's having trouble following some quarter century old law that's perfectly plain, put it in the plea agreement, what are they going to do with the hair splitting between use and stolen? This just isn't the case. Well, they're trying to standardize their plea agreements and to use form language so that presumably everybody knows what the language means. It has been construed numerous times. Sometimes you run into problems like this when you use form language. In the last argument, Judge Trexler, you asked what the conduct of an officer of the court should be. And clearly this may have been accidental. I'm not accusing the attorney of anything. But certainly the conduct of an officer of the court should not be to refer the court to a paragraph and not have, maybe she didn't read the whole thing, but to just say that look on page 3, you'll see that Todd Dry's name is mentioned, and then not say, and the next sentence says, restitution is not available under Huey v. United States and it's not under the plea agreement because it wasn't specified. The reason I ask, when I was a district judge, and I would do guilty pleas and do sentences, if I forgot something, one of the lawyers would say, Judge, don't you want to also do this? Which I always appreciated, and it helps clean up the record. It does make sure that everything that needs to be done has been done, everything that needs to be considered has been considered. And we often see that. And that's what they should have done. It's very much appreciated, and I think part of the responsibility of the lawyers. She should have said, this is what it says. I don't agree with it, but here it is. Okay. Thank you.
judges: William B. Traxler, Jr., Diana Gribbon Motz, James A. Wynn, Jr.